(15 App. Div. 567.)

## In re JOURNEAY'S WILL.

## In re ENGELBRECHT.

(Supreme Court, Appellate Division, Second Department. April 6, 1897.)

1. WILLS—TESTAMENTARY CAPACITY—EVIDENCE.

Testamentary capacity is shown by evidence that testatrix executed her will in January, 1892, and in April made a codicil, which she caused to be witnessed by three specialists in the treatment of nervous and mental diseases; that in September, 1895, she executed a second codicil, republishing the will and the first codicil, because of the death of the witnesses to the first codicil; that the last codicil was witnessed by alienists, who testified to her competency to execute the will, though there was evidence that she was jealous of her husband, from whom she separated shortly before his death, and felt resentful to her daughter, who had espoused the cause of her father.

2. SAME—VALIDITY—UNDUE INFLUENCE.

Undue influence is not established by the mere fact that, though a woman had children and grandchildren, the principal beneficiary under her will was her son-in-law.

Appeal from surrogate's court, Richmond county.

Proceeding for the probate of the will and codicil of Abigail Journeay. From an order admitting the will and codicil to probate, Mary Louisa Engelbrecht appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Calvin D. Van Name, for appellant.

George J. Greenfield, for respondents Susan Sprague and others.

WILLARD BARTLETT, J. The will which is the subject of this controversy was made by Abigail Journeay, a resident of Staten Island, who died on the 13th day of February, 1896. At the time of her death she was about 84 years old. She was the widow of Henderson Journeay, who died on December 3, 1891, at the age of 85 years. There were three children of the marriage,—a son, who died a few days after his father, without ever having been married, and without leaving any will; a daughter, Susan Sprague, the wife of Edward Sprague; and another daughter, Mary L. Engelbrecht, the wife of John W. C. Engelbrecht. In the summer of 1891, differences having arisen between them, the old couple separated, and the husband went to live at the house of his daughter Mrs. Engelbrecht. This separation appears to have been largely due to the belief on the part of Mrs. Journeay that her husband had been guilty of infidelity, or, at all events, had attempted to establish improper relations with a servant girl in the household. From the time of his departure she manifested a jealous dislike towards him, and, when informed of his death, she refused to allow him to be buried in the lot where she was to be buried, and intimated that if his body was placed there she would have it thrown out on the beach. The evidence also makes it plain that she entertained feelings of great hostility towards her daughter Mrs. Engelbrecht for taking sides with her father, and espousing

his cause. Mrs. Journeay made her will on January 4, 1892, about a month after her husband's death. She bequeathed to her daughters, Susan A. Sprague and Mary Louisa Engelbrecht the sum of $100 each; to her grandson, David H. Sprague, $800; to her granddaughter, Eleanor M. Sprague, $500; and all the rest and residue of her estate, real or personal, she devised and bequeathed to her son-in-law Edward Sprague, who, she said, had always been as good and kind to her as if he were her own son. The executors named in the instrument were her son-in-law, Edward Sprague, and her grandson, David H. Sprague, and the paper was executed and declared by the testatrix to be her last will and testament, with all the formalities required by law, in the presence of two of her neighbors as witnesses, who were called in this proceeding, and testified to its due execution. The value of her estate was about $4,500. On the 25th day of April, 1892, Mrs. Journeay executed a codicil, directing that in case of the death of any of the legatees named in the will the legacies should not lapse, but should be payable to the issue or personal representatives of the deceased legatee. This codicil was witnessed by Mathew D. Field, Stuart Douglas, and Frank H. Ingram, all of whom were physicians, and specialists in the treatment of nervous and mental diseases. Subsequently, on the 18th day of September, 1895, the testatrix executed a second codicil, republishing the will and the first codicil, already mentioned, and reciting that this was done in view of the death of the three witnesses to the first codicil. This second codicil was witnessed by Dr. Emmett C. Dent, of Ward's Island, and Dr. William E. Dold, of White Plains, both of whom were also expert alienists. The will and the two codicils are attacked in the present proceeding by Mrs. Engelbrecht, one of the daughters of the testatrix, on the ground that the testatrix was insane at the time of their execution, and upon the further ground that their execution was procured by undue influence exercised over Mrs. Journeay by her son-in-law Edward Sprague.

Much stress is laid upon the fact that Mr. Sprague appears to have taken considerable pains to have the codicil witnessed by persons who were qualified to form expert opinions as to the mental condition of the testatrix, and it is argued that this shows that he knew she was insane, and sought to anticipate a contest of her will by having her examined in advance by experts in insanity. It seems to me, however, that it is just as fair and legitimate an argument to say that he feared an unfounded attack would be made upon her testamentary capacity by those who had been unfriendly to her during her lifetime, and that he therefore endeavored to guard her against the possible effect of such a contest by perpetuating evidence that would strongly tend to prove that she was competent to make a will. Such a precaution is certainly unusual, but now, that so many wills are contested upon insufficient grounds, it can hardly be characterized as either unnatural or unwise. The testimony of the physicians who witnessed the last codicil is very clear and convincing to the effect that Mrs. Journeay was of sound mind, memory, and understanding at the time of its execution, and ex-

tirely competent to make a will. The attention of the witnesses was called to the fact that she had not been as liberal in her will towards Mrs. Engelbrecht as towards the other legatees. In the course of her conversation with the doctors she referred to Mrs. Engelbrecht as having caused her a good deal of trouble, and said that she had not been a good daughter, and had accused her of being crazy; and she declared, therefore, that it was intentionally that she had left her only a small sum of money. In my opinion, the clear and explicit evidence given by these qualified specialists as to the mental condition of the testatrix at the very time of executing the codicil which republished the will should prevail, even if the proof from other sources indicating that the testatrix had been deranged, or suffered from delusions, at other times, was much stronger than it is. I have carefully read through this entire record, however, and I am impressed by the weakness of the testimony offered to establish the allegation of incapacity. It does show that on a number of different occasions Mrs. Journeay's behavior was very eccentric, and it also indicates a probability that she acted under a jealous misapprehension as to her husband's conduct when she accused him of being unfaithful to her, and denounced him for supposed improprieties with their servant, for he was a very old man at this time, and his vision was so imperfect that he had to grope his way about. Unfounded jealousy, however, and unjust resentment of fancied wrongs, are by no means incompatible with the rational exercise of the mind in the ordinary affairs of life; and, however unjustifiable Mrs. Journeay's conduct may have been towards her old husband and in reference to his affairs, I am satisfied from this record that she understood perfectly well what she was doing when she made this will and these codicils. There is nothing unnatural in the provisions of the will, considering the attitude towards the testatrix assumed by her daughter, Mrs. Engelbrecht. It may also be observed, so far as it is contended that the testatrix was under a delusion with reference to her husband's acts, that there is no proof whatever that he actually had not been guilty of the various accusations which she made against him.

As to the allegation of undue influence, there is practically no evidence to support it, and it seems to be based merely upon the idea that, as the son-in-law was, in fact, the principal beneficiary under the will, he would naturally have endeavored to induce his mother-in-law to make it. See Society v. Loveridge, 70 N. Y. 387.

I think the decision of the acting surrogate was clearly right, and that the decree should be affirmed, with costs. All concur.